UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LINDA L.,

                Plaintiff,

        v.

            **DECISION AND ORDER**

            20-CV-651S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

       1.     Plaintiff Linda L.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

       2.     Plaintiff protectively filed her application with the Social Security Administration on August 9, 2017; hence her claims are governed by the post-March 2017 medical evaluation rules, 20 C.F.R. § 404.1520c (see Docket Nos. 17, Pl. Memo. at 14-15; 20, Def. Memo. at 5-6).  Plaintiff alleged disability beginning July 15, 2016, due to cerebral aneurysm, non-ruptured; cerebral infarction due to thrombosis of others cerebral artery with late effects of infarct; headaches and migraine headaches and asthma.  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3.     On October 24, 2019, ALJ Stephen Cordovani held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Timothy Janikowski appeared and testified.  (R.[2] at 85-114, 11.)  At the time of the hearing, Plaintiff was 47 years old, with a high school education.  She had past relevant work as an order clerk (sedentary exertion level work) and administrative clerk (light work) but was determined to be unable to work from July 15, 2016, through March 31, 2019 (R. at 13, 24), the period Defendant deems to be relevant for this claim (Docket No. 20, Def. Memo. at 1).

4.     The ALJ considered the case *de novo* and, on November 27, 2019, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 17, 20.)  Plaintiff filed a response on May 4, 2021 (Docket No. 21), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there

---

[2]Citations to the underlying administrative record are designated as "R." for the Record filed as Docket No. 11; "R.2." for the Record filed as Docket No. 12.  These two records were not consecutively paginated.

[3]The ALJ's November 27, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity

of this analysis in <u>Bowen v. Yuckert</u>, and it remains the proper approach for analyzing

whether a claimant is disabled.  482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119

(1987).

   9.  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If [s]he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits [her] physical
> or mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider
> [her] disabled without considering vocational factors such as
> age, education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, [s]he has the residual functional capacity to
> perform [her] past work.  Finally, if the claimant is unable to
> perform [her] past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

<u>see also</u> 20 C.F.R. § 404.1520; <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999).

   10.  Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  <u>See</u> <u>Yuckert</u>, <u>supra</u>,

482 U.S. at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984).  The final step

is divided into two parts.  First, the Commissioner must assess the claimant's job

qualifications by considering her physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  <u>See</u> 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity from July 15, 2016, through her date of last insured, March 31, 2019.  (R. at 13.) At step two, the ALJ found that Plaintiff has the following severe impairment:  cerebral aneurysm, non-ruptured; cerebral infarction due to thrombosis of others cerebral artery with late effects of infarct; headaches and migraine headaches and asthma.  Id. at 13.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, with limitations (R. at 16).  Under the RFC, Plaintiff could occasionally balance on uneven ground or terrain and occasionally stoop, kneel, crouch, or crawl.  She is limited to no climbing of ladders, ropes or scaffolds and no work around hazards such as loud noise, unprotected heights, or moving mechanical parts. She could tolerate no exposure to flashing lights or bright lights (defined as light in greater intensity than observed in regular business or retail setting or outdoors).  Plaintiff required the use of a one-handed cane for ambulation.  Plaintiff further must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. She was able to understand, remember, and carry out simple instructions and tasks, with no supervisory duties, no independent decision-making and minimal changes in work routine and processes.  (Id.)

13.     At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (R. at 24.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 25.)  The ALJ found Plaintiff had additional limitations to performing sedentary work.  The ALJ thus sought the views of a Vocational Expert, posing hypotheticals of a claimant with similar RFC, age, education, and work experience to Plaintiff.  The expert concluded that this hypothetical claimant could perform such jobs as telephone solicitor, order clerk, and final assembler (all sedentary work).  (Id.)  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 26.)

14.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed properly to evaluate the findings of primary care provider, PA Nancy Lance (R. at 1063, 21-22) under the post-March 2017 standards for determining the persuasiveness of the medical opinion (Docket No. 17, Pl. Memo. at 14-19).  By rejecting medical opinion evidence from the only treating and examining physical opinion of record (Docket No. 21, Pl. Reply Memo. at 1), the ALJ apparently relied upon his lay opinion in reaching the RFC (Docket No. 17, Pl. Memo. at 19-26).  For the reasons that follow, this Court agrees that the ALJ relied upon his lay opinion in formulating the RFC, requiring remand of these proceedings.

15.     Plaintiff filed her claim after March 27, 2017; hence this case is governed by the revised medical opinion rules effective for March 2017 (and thereafter) filed claims, 20 C.F.R. § 404.1520c (Docket No. 20, Def. Memo. at 4-5; Docket No. 17, Pl. Memo. at 14).

16.     The revised medical opinion evaluation rules abolished the concept of treating sources and the treating source rule, <u>John F. v. Commissioner</u>, No. 20CV1003, 2021 WL 3851988, at *3 (W.D.N.Y. Aug. 27, 2021) (Wehrman, Mag. J.) (on consent). Instead of giving deference or specific weight to any medical opinion or retaining a perceived hierarchy of medical sources, <u>Victor B. v. Commissioner</u>, No. 20CV1154, 2021 WL 3667200, at *2 (W.D.N.Y. Aug. 17, 2021) (Geraci, J.), under the new rules the ALJ considers five factors (supportability; consistency; relationship of the source with the claimant, medical source's specialization; and other factors) in considering medical opinion evidence, 20 C.F.R. § 404.1520c(c).  Supportability and consistency are the most important factors, <u>id.</u> § 404.1520c(b)(2).   The ALJ must explains his appeals to supportability and consistency when considering a medical opinion, <u>Melissa F. v. Comm'r</u>, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (Carter, Mag. J.) (on consent), but the ALJ need not explain how the remaining factors were considered, <u>John F.</u>, <u>supra</u>, 2021 WL 3851988, at *4.

17.     Supportability is "the extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation," Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5833 (Jan. 18, 2017); <u>Melissa F.</u>, <u>supra</u>, 2021 WL 3887256, at *6.  The more relevant the objective medical evidence and supporting explanation are to support the medical opinion the more persuasive it is, 20 C.F.R. § 404.1520c(c)(1).

18.     As for the consistency of a medical opinion to be deemed persuasive, the more that opinion is consistent with evidence from other medical and nonmedical sources, the more persuasive it will be considered, 20 C.F.R. § 404.1520c(c)(2).

19.     This Court notes an overlap between these two factors.  Both supportability and consistency require in part comparison of the medical opinions with other medical sources, see 20 C.F.R. § 404.1520c(c)(1) and (c)(2).

20.     In the present case, Ms. Lance examined Plaintiff on March 8, 2019, and observed what the ALJ termed "some rather significant physical and mental imitations" (R. at 21, 1058).  Ms. Lance found that Plaintiff could stand for only 30 minutes at one time, sit for 4 hours, lift to 10 pounds occasionally, but up to 5 pounds frequently (R. at 1058, 21).  Ms. Lance found Plaintiff could occasionally bend, stoop, raise her arms over shoulder level, and would need to elevate her legs during an 8-hour workday (R. at 1058, 21).  Ms. Lance noted marked impairments in Plaintiff's ability to understand, remember, and carry out detailed instructions and to maintain attention and concentration, while finding that Plaintiff was moderately impaired in her ability to understand, remember, and carry out very short and simple instructions (R. at 1058, 21-22).  Ms. Lance cited Plaintiff's cerebral vascular accident and frequent headaches as causing difficulty in remembering and Plaintiff's memory deficits (R. at 22, 1059).

21.     The ALJ, however, determined that Ms. Lance's assessment was not persuasive, noting the absence of an explanation for limitations on Plaintiff's left arm or the need to elevate her legs (R. at 22).  The ALJ countered with Ms. Lance's February 5, 2019, examination of Plaintiff (R.2. at 117) which noted normal findings including Plaintiff having a full range of motion (R. at 22, R.2. at 117-20).  The ALJ also found Ms. Lance's

opinion was inconsistent with her later examination of Plaintiff on April 9, 2019, which also documented normal findings (R. at 22, R.2. at 278-79).

22.    Plaintiff faults the ALJ for not evaluating Ms. Lance's opinion upon the post-March 2017 factors and merely rejecting the entire opinion due to the purported inconsistency with two examination results (Docket No. 17, Pl. Memo. at 14-19).  Despite the post-March 2017 regulations, Plaintiff argues the foundational nature of Ms. Lance's opinion as coming from a treating source (id. at 18-19; Docket No. 21, Pl. Reply Memo. at 2).

23.    Defendant Commissioner argues that the post-March 2017 regulations do not require the ALJ to defer or give specific evidentiary weight to any medical opinion (Docket No. 20, Def. Memo. at 5).  Defendant contends that the ALJ correctly applied § 404.1520c(b)(2) in finding that Ms. Lance's assessment was not persuasive overall as it was "inconsistent" with the record (Docket No. 20, Def. Memo. at 7; R. at 22).  Defendant emphasizes the substantial evidence standard upholds the ALJ's findings (Docket No. 20, Def. Memo. at 8).

24.    Defendant further contends that the ALJ properly found no supportability for Ms. Lance's assessment (id. at 9), noting the inconsistencies between that opinion and other medical records including Ms. Lance's own observations (id. at 10; R. at 23, 153-55).

25.    This Court finds that the ALJ properly evaluated Ms. Lance's assessment of Plaintiff.  While the ALJ rested his conclusion on supportability of that opinion based upon objective medical evidence (R. at 22), the ALJ's stated objections in fact go to the consistency of Ms. Lance's opinion with her observations, treatment notes, and the record

review of the state agency doctor, Dr. D. Brauer (R. at 153-55, 23; <u>see</u> Docket No. 20, Def. Memo. at 10).

26.     Review of supportability or consistency is based upon substantial evidence and here the ALJ had substantial evidence to support finding a lack of consistency between Ms. Lance's opinion and the medical record.  Ms. Lance herself observed normal findings for Plaintiff (R.2. at 117-20, 278-79, R. at 22; <u>see</u> Docket No. 20, Def. Memo. at 9) and the University of Buffalo Neurosurgery in April 2019 also observing normal findings upon its examination of Plaintiff (R.2. at 278-29, R. at 22; <u>see</u> Docket No. 20, Def. Memo. at 9) while Ms. Lance opined physical limitations (R. at 1058).  Therefore, the ALJ had substantial evidence to conclude that Ms. Lance's opinion was not persuasive.

27.     Therefore, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 17) on this ground is denied.

28.     Plaintiff next argues that the ALJ disregarded the only medical opinions of record from Physician's Assistant Lance and Dr. Brauer, thus the resulting RFC was based solely on the ALJ's lay opinion (Docket No. 17, Pl. Memo. at 19-26).

29.     Defendant responds that Dr. Brauer's opinion (that Plaintiff could perform medium work with avoidance of even moderate exposure to hazards such as machinery and heights, R. at 153-55; Docket No. 20, Def. Memo. at 12) provides supporting evidence for the RFC finding (Docket No. 20, Def. Memo. at 12-13; R. at 16).  Defendant also points to the state agency and consultative examiner's opinions which support the eventual RFC (Docket No. 20, Def. Memo. at 15).  Defendant then compares Ms. Lance's assessment that Plaintiff was moderately impaired in her ability to understand, remember, and carry out very short and simple instructions, concluding that it allowed Plaintiff to perform

unskilled work (Docket No. 20, Def. Memo. at 15).  This is comparing Plaintiff's physical impairments with her mental impairments.

30.      Plaintiff replies that the ALJ clearly did not rely upon state agency reviewer Dr. Brauer's opinion because that opinion's exertion level (medium) differs from the ALJ's (sedentary) (Docket No. 21, Pl. Reply Memo. at 4; see Docket No. 17, Pl. Memo. at 21-22).

31.      Plaintiff, however, cites cases regarding the controlling weight (or failure to assign such weight) to medical opinions (Docket No. 17, Pl. Memo. at 20, quoting John G. v. Saul, No. 19CV1203, 2021 WL 118313, at *4 (W.D.N.Y. Jan. 13, 2021) (Roemer, Mag. J.) (by consent)), the standard only applicable to pre-March 2017 claims.  In John G, that claimant filed on February 24, 2016, months before March 27, 2017, and the amended medical evaluation standards, John G., supra, 2021 WL 118313, at *1. Consistent with the revised medical evaluation regulations, this Court will not require the ALJ to apply controlling weight to any medical source's opinion.

32.      Plaintiff, in reply, also takes issue with the ALJ not relying upon any medical opinion in determining the RFC (Docket No. 21, Pl. Reply Memo. at 3-6).   Save Ms. Lance's assessment and Dr. Brauer's opinion, there is no other medical assessment of functioning (id. at 5-6), leading to Plaintiff's conclusion that the ALJ determined the RFC bases only on his lay opinion (id. at 6).

33.      Although Defendant found items in the record to support limitations noted in the RFC (see Docket No. 20, Def. Memo. at 14), there is no medical justification for the ALJ concluding Plaintiff could perform sedentary work when Dr. Brauer opined she could

perform medium work (R. at 23, 153; Docket No. 17, Pl. Memo. at 21-22; Docket No. 21, Pl. Reply Memo. at 3).

34.     Although judges have held that the RFC is an administrative finding not a medical one, Santos G. v. Comm'r, No. 20CV821, 2021 WL 3861424, at *5 (W.D.N.Y. Aug. 30, 2021) (Bush, Mag. J.) (on consent, citing 20 C.F.R. §§ 404.1527(d), 416.927(d)), the ALJ needs some evidentiary basis to support the RFC, see Golden v. Saul, No. 18CV6803, 2020 WL 3248821, at *4 (W.D.N.Y. June 16, 2020) (Roemer, Mag. J.) (on consent) (RFC is a medical assessment requiring medical testimony or some medical evidence to support, citing SSR 83-10, 1983 SSR LEXIS 30, at *17, 1983 WL 31251, at *7 (glossary))  Furthermore, the regulations cited in Santos G. applied to pre-March 27, 2017, applications, see 20 C.F.R. § 404.1527, "evaluating opinion evidence for claims filed before March 27, 2017," and addressed who made the ultimate determination of disability.  As noted elsewhere in a pre-March 2017 application case, "although the SSR uses the term 'medical' in its definition of RFC, the RFC determination is nonetheless reserved to the Commissioner," Daniel M. v. Comm'r, No. 19CV1282, 2021 WL 958451, at *1, 4 (W.D.N.Y. Mar. 15, 2021) (Carter, Mag. J.) (on consent).

35.     At issue here is whether the ALJ had substantial evidence to find an RFC for sedentary work absent any supporting medical evidence and not a question whether the ALJ can make that administrative determination.

36.     The ALJ here reached the sedentary finding based upon "a reasonable prophylactic measure consistent with the presence of multiple aneurysms would appear to support only a sedentary, versus medium exertional capability" (R. at 23).  Although Defendant notes the ALJ's rejection of Dr. Brauer's medium exertion opinion and denies

the existence of evidentiary gaps (Docket No. 20, Def. Memo. at 12-13), there is no medical reason for finding Plaintiff could perform sedentary work (as opposed to medium exertion or no level of exertion at all).  It is apparent that this finding solely comes from the lay opinion of the ALJ on the level of exertion Plaintiff could perform with her aneurysms and as such was rendered in error.

37.     The ALJ found Ms. Lance's opinion not to be persuasive (as discussed above) and came to a different conclusion than Dr. Brauer on the level of work Plaintiff could perform (an opinion the ALJ found only to be "somewhat persuasive," R. at 23) but without any medical foundation for that difference.

38.     There must be evidence from the medical record to support the exertion finding in the RFC.

39.     On this basis, Plaintiff's Motion for Judgment on the Pleading (Docket No. 17) is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 17) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 20) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      September 13, 2021
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge